## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **ERIKA BUCKLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION FILE** |
| | ) | **NO.: _____** |
| **MARK T. ESPER,** | ) | |
| **SECRETARY OF THE ARMY,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff ERIKA BUCKLEY, and files this, her Complaint and Jury Demand, showing the Court the following:

## I.

## NATURE AND PURPOSE

1.

This is an action for damages, retaliation, declaratory and injunctive relief authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 as amended, including the Civil rights Act of 1991, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991, and 42 U.S.C. 1981A ("Title VII").

2.

This lawsuit is brought because Defendant, DR. MARK T. ESPER, SECRETARY OF THE ARMY for The Department of The Army, ("Defendant"), pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, *et seq.* ("Title VII"), maintaining a policy, practice, custom or usage of discriminating against Plaintiff, in regard to terms, conditions and privileges of employment, and for damages, back pay and other equitable relief for Plaintiff, who has been discriminated and retaliated against by Defendant on the basis of her race, gender and reprisal (prior EEO activity). Plaintiff also brings an action for hostile work environment.

## II.

## JURISDICTION AND VENUE

3.

This action is brought for a declaratory judgment, injunctive relief and compensatory damages, pursuant to 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1688, 28 U.S.C. Sections 2201 and 2202, and Title VII. This Court has jurisdiction to hear the Plaintiff's claims pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) 1337 and 42 U.S.C. 2000e-5(f) [Section 706(0(s) and (3) and 704(a) of Title VII]. This Court also has jurisdiction to hear the Plaintiff's claims pursuant to 5 U.S.C. Section 7703(b)(2).

4.

Venue is proper in the Middle District of Georgia, Macon Division pursuant to 28 U.S.C. Section 1391(b) as Muscogee County, Georgia is the County where the Defendant operates the U.S. Army Installation Management Command IMCOM Directorate-Training Headquarters for Fort Benning, Georgia, Department of the Army, the employer's business location.

## III.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

5.

On September 7, 2017, Plaintiff was issued a Notice of Proposed Adverse Action, terminating her employment effective October 7, 2017.

6.

On August 17, 2017, Plaintiff filed her Equal Employment Opportunity ("EEO") complaint of discrimination against then acting Secretary of the Army, Ryan D. McCarthy, DA Docket Number: ARBENNING17JUL02430.

7.

On November 29, 2017, at the Department of the Army Headquarters, U.S. Army Reserve Command, a fact-finding was conducted pursuant to Title 29, Code of Federal Regulations, Part 1614.

8.

On or about October 19, 2017, and received by Plaintiff on October 20, 2017, the Department of Army issued a letter terminating her effective October 21, 2017.

9.

Ms. Buckley submitted a resignation on the same day based on constructive discharge.

## IV.

## PARTIES

10.

Plaintiff, ERIKA BUCKLEY ("Plaintiff" or "Ms. Buckley") is an African American female citizen of the United States and a resident of Muscogee County, Georgia.

11.

Ms. Buckley was employed by the Department of the Army, and more specifically, the U.S. Army Command Headquarters, Directorate of Force Programs, located at Fort Benning, Georgia. The Defendant maintains and administers records relevant to its employment practices. Service of process may be made upon the United States Attorney of the Middle District of Georgia, the United States Attorney General, and United States Department of the Army, by registered or certified mail, pursuant to the Federal Rules of Civil Procedure (Rules 4(I)(1)(A), (B), & (C)).

4

12.

Defendant, MARK ESPER, is the SECRETARY OF THE ARMY and is the appropriate Defendant in Title VII cases.

13.

Defendant is an employer within the meaning of Title VII (42 U.S.C. 2000e, *et seq.*) and the Rehabilitation Act.

**V.**

**FACTUAL ALLEGATIONS**

14.

Ms. Buckley is an African-American Speech Language Pathologist/GS 12. Ms. Buckley was assigned to Martin Army Community Hospital ("MEDDAC") at Fort Benning, Georgia.  Ms. Buckley was assigned to MEDDAC on March 1, 2010 as a speech pathologist.  Her supervisor at MEDDAC was Major (MAJ) Miller, who was the Chief of the Department of Rehabilitation Services.  Major Miller is Caucasian.

15.

As a speech pathologist, Ms. Buckley provides direct clinical services in the identification, evaluation, and treatment of individuals with disorders in the comprehension and production of speech and language resulting from organic causes, functional problems, learning deficits or social deprivation, using diagnostic

and therapeutic techniques to identify and resolve communication abnormalities that present serious problems to social contacts, educational development, and employment opportunities. Ms. Buckley evaluates patients to determine the nature and extent of speech or language impairment. She selects, administers, and interprets diagnostic tests to evaluate nonverbal abilities, speech levels, articulation errors, and language abilities. Ms. Buckley also formulates individual/group therapy plans best suited to each situation, conducts on-going therapy, employ's counseling skills promoting a therapeutic relationship to maximize patients progress, participates in planning complete therapeutic programs, conducts speech therapy sessions, and maintains rapport with patients and their families.

16.

Within MEDDAC there are several clinics, including the Traumatic Brian Injury Clinic ("TBI") where Ms. Buckley worked.

17.

Ms. Buckley was the only African American female clinician within TBI. The other clinicians were either white females of white males.

18.

There were three physicians within TBI. Dr. Ribeiro is a Caucasian Primary Care Physician in the TBI. Dr. Ribeiro is a GS-14. Ms. Ute Chavers was the nurse case manager in the TBI clinic who worked directly with Dr. Ribeiro. Dr. Peter

Szostak was the primary care physician in the TBI clinic and Dr. Felix Ortiz is a neuropsychologist (GS-14-8) in the clinic.

19.

Major Miller was second-level supervisor for the clinicians in TBI.

20.

Darryl Bryant is the health system specialist (GS-0671-11). He was Ms. Buckley's health system program manager at the clinic and the person that Ms. Buckley complained to.

21.

During the course of her employment, Ms. Buckley was mistreated by her supervisor based on her race (African American), her color (dark skinned), and her sex (female).

22.

Ms. Buckley filed her first EEO Complaint No.: ARBENNING14DEC04536 on December 8, 2014 for racial discrimination, hostile work environment and harassment. On January 15, 2015, Ms. Buckley withdrew the complaint.

23.

On March 10, 2016, Ms. Buckley filed Complaint No.: ARBENNING16JAN00372 for racial discrimination, hostile work environment and harassment.

24.

On July 29, 2016, Ms. Buckley filed Complaint No.: ARBENNING16AUG02955 for racial discrimination, hostile work environment, harassment and retaliation.

25.

In January 2016, Ms. Buckley filed an EEO complaint against Major Miller when he took a group created by Ms. Buckley to help with patient treatment and gave it to a white Caucasian employee who was not Ms. Buckley's professional equal. During a meeting with Ms. Buckley, Mr. Robert Cooper and Dr. Ribeiro they stated that "a monkey could do that job" referring to Ms. Buckley's group program. The complaint was still pending when the incident involving one of Dr. Ribeiro's patients occurred. Major Miller knew that Ms Buckley was involved in protected activity because he was the subject of the complaint.

26.

Before patients see Ms. Buckley, they are first seen by Dr. Ribeiro as the Primary Care Physician. Based on patients' complaint, Dr. Ribeiro refers them to a specialist such as neuropsychologist. The neuropsychologist tests the patients, and based on the results, the neuropsychologist will either refer the patient to Ms. Buckley (speech language pathologist) or to Mr. Robert Cooper, occupational therapy ("OT").

27.

On July 29, 2016, a patient was sent over to Ms. Buckley by Dr. Ribeiro. During the session with Ms. Buckley, the patient started telling her "you know, Dr. Ribeiro said I should have had this appointment a long time ago, and Dr. Ribeiro said I just have to get through with this and this is part of his plan for me." The patient who was a white male approximately 25 years old referred by Dr. Ribeiro also berated and belittled Ms. Buckley.  Because Dr. Ribeiro was not at work on Friday, July 29, 2016, Ms. Buckley complained to Darryl Bryant who was the Administrator of the TBI Clinic.

28.

The patients that usually complained about Ms. Buckley were Caucasian males between 25-35 years old. These patients were usually referred to the OT, who is Caucasian, or off-post to a white facility.  On at least one occasion, Dr. Ribeiro took a patient to the administrator to complain about Ms. Buckley.

29.

At some point, the majority of the patients that saw Ms. Buckley became African Americans. The soldiers that complained about Ms. Buckley talked to Dr. Ribeiro and the case manager before they saw Ms. Buckley.  Dr. Ribeiro's case manager is also Caucasian.

30.

In addition to transferring patients from Ms. Buckley, Dr. Ribeiro also placed negative comments allegedly made by the patients about Ms. Buckley in the patients' charts. (IF 1: P. 000248, L. 5-9). Dr. Ribeiro sent emails to Ms. Buckley's health system specialist/manager, Mr. Darryl Bryant, about patient alleged complaints.  Dr. Ribeiro's nurse also sent patient complaints to Mr. Bryant about Ms. Buckley.

31.

The harassment increased after Ms. Buckley's EEO complaint against Major Miller. The harassment of Ms. Buckley was ongoing.  The continued harassment interfered with Ms. Buckley's work performance.  The harassment also affected Ms. Buckley's health.   Ms. Buckley's work was also affected because Dr. Ribeiro never spoke to her about patients' treatment and care.

32.

On April 25, 2017, Ms. Buckley inadvertently emailed a copy of a patient's protected health information to an alleged unauthorized recipient Barbara Parker.

33.

In May 2017, an investigation was conducted into whether the disclosure violated the Health Insurance Portability and Accountability Act (HIPPA) was

violated.  The results of the investigation concluded that "a HIPPA violation cannot be substantiated, this alleged violation is closed, and no other action is required.

34.

Despite the investigation findings, Major Miller and Major Zhu, the chief of the TBI clinic, continued to pursue the matter because they wanted to get her on a HIPPA violation.

35.

On July 12, 2017, Major Zhu issued a letter to Ms. Buckley notifying Ms. Buckley that her conduct had violated HIPPA and that she would be suggesting her removal from federal service.

36.

In an effort to obtain assistance after her employment was threatened, Ms. Buckley notified her Congressman's office.

37.

On August 28, 2017, Captain Fredrick D. Davis, Sr., the chief of patient administration at MEDDAC, issued a letter indicating that releasing the patient information to the Congressman's office was a violation of HIPPA.

38.

On September 7, 2017, Major Zhu issued another letter telling Ms. Buckley that her April 25, 2017 inadvertent disclosure and her disclosure to Congressman

Sanford Bishop's office was a violation of HIPPA and that she was proposing her removal from federal service.

39.

On October 19, 2017, Major Miller issued a letter to Ms. Buckley formally notifying Ms. Buckley that effective October 21, 2017, she would be removed from federal service.

40.

Other non-African American employees that had committed similar conduct were never threatened with termination or terminated.

41.

When Major Miller issued the formal notice to terminate Ms. Buckley, he and Major Zhu were aware of Ms. Buckley's prior EEO complaints.

## CONDITIONS PRECEDENT

42.

All conditions precedent has been performed or have occurred.

## COUNT I

## SEXUAL DISCRIMINATION
## VIOLATION OF TITLE VII

43.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

44.

Ms. Buckley, a female, is a member of the protected class and entitled to the protections of Title VII, 43 U.S.C. § 2000e, *et seq.,* including, but not limited to, the right to be free from sexual discrimination and harassment in her employment.

45.

During her employment, Ms. Buckley's supervisors subjected Ms. Buckley to disparate treatment in the terms, conditions, benefits and privileges of employment, including but not limited to, excessive scrutiny of her professional practice including her test results, therapy plans and medical coding by Major Zhu, while male co-workers were allowed to practice professionally without scrutiny.  White male patients were encouraged to be firm with Ms. Buckley.

46.

Said discrimination and harassment was directed at Ms. Buckley because of her sex, female.

47.

The sexual discrimination was severe and pervasive and adversely affected the terms, conditions and privileges of Ms. Buckley's employment.

48.

Defendant knew or should have known of the harassment and failed to take prompt and remedial action.

49.

Ms. Buckley's efforts to get the harassment stopped resulted in a tangible job detriment.

50.

As a direct and proximate result of Defendant's sexual discrimination and harassment, Ms. Buckley has suffered and continues to suffer economic damages (lost wages and job benefits), severe emotional distress, mental anguish, embarrassment, humiliation, and physical suffering.  All of these damages are as yet undetermined but are believed to be an amount in excess of $75,000.00.

## COUNT II

## VIOLATION OF TITLE VII RACE BASED
## DISCRIMINATION WITH TANGIBLE EMPLOYMENT ACTION

51.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully forth herein.

52.

Ms. Buckley is an African American and is a member of a protected class under Title VII of the Civil Rights Act of 1964.

53.

The aforesaid acts and omissions of Defendants, directly and by and through its agents, officers, managers, supervisors and proxies, including but not limited to

14

Defendants, including the failure to have a properly functioning harassment policy, the failure to remedy the effects of discrimination by Defendant, discrimination in the terms, privileges and conditions of Ms. Buckley's employment, harassment of Ms. Buckley and condoning the existence of a hostile work environment, were in violation of Defendants duty not "to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

54.

Defendant acted intentionally, willfully and wantonly or alternatively, with reckless indifference or negligence to Ms. Buckley's federally protected rights.

## COUNT III

## REPRISAL DISCRIMINATION
## VIOLATION OF TITLE VII

55.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

56.

Ms. Buckley is entitled to the protections of Title VII, 42 U.S.C. § 2000e *et seq.*, including but not limited to, the right to be free from retaliation for opposing racial discrimination, sexual discrimination and for prior EEO activity.

57.

On several occasions during her employment, Ms. Buckley reported and opposed the harassment and discrimination she was subjected to.

58.

Because of Ms. Buckley's reports and opposition to the racial harassment and sexual discrimination and asserting her rights, Defendant retaliated and continued to retaliate against Ms. Buckley through the end of her employment, including subjected her to adverse working conditions, made false accusations about her, subjected her to false disciplinary actions, and ultimately terminated her employment.  Such retaliation and reprisal actions violate 42 U.S.C. § 2000e-3(a).

59.

As a direct and proximate result of Defendant's retaliation and reprisal, Ms. Buckley has suffered and continues to suffer economic damages (lost wages and job benefits), severe emotional distress, mental anguish, embarrassment, humiliation, and physical suffering.  All of these damages are as yet undetermined but are believed to be an amount in excess of $75,000.00.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL STRESS

### 60.

The foregoing paragraphs are re-alleged, restated, and incorporated herein as though fully set forth herein.

### 61.

Major Zhu and Major Miller intentionally, maliciously, wantonly and in gross and reckless disregard for Plaintiff's health and safety, engaged in extreme and outrageous conduct when they subjected Plaintiff to discrimination and harassment causing Plaintiff to suffer great emotional distress, mental anguish, loss of income, humiliation, and other indignities.

## COUNT V

## NEGLIGENT SUPERVISION

### 62.

The following paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

### 63.

At all times relevant hereto, Defendant knew or should have known that the Major Zhu and Major Miller were using improper motives to assign, transfer, promote and terminate employees.

64.

The Defendant negligently Supervised Major Zhu and Major Miller and allowed them to carry out their discriminatory and unlawful acts.

65.

As a direct, proximate and foreseeable result of the Defendant's negligence, Plaintiff was discrimination and harassment, intimated, had her privacy invaded, retaliated against and reassigned to remedial tasks. Plaintiff has suffered and continues to suffer lost wages, damages and benefits for which the Defendant is directly liable, strictly liable, liable by proxy and vicariously liable.

## COUNT VI

## NEGLIGENT RETENTION

66.

The following paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

67.

Pursuant to O.C.G.A. § 34-7-20, an employer "is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency."

68.

At all times relevant hereto, Defendant knew or should have known about prior complaints about Major Zhu and Major Miller discriminatory treatment and harassment of other employees. By retaining Major Zhu and Major Miller it was reasonably foreseeable that they would injure others in the performance of their duties, including Ms. Buckley.

69.

Defendant is liable for hiring and or retaining Major Zhu and Major Miller when it knew, or in the course of ordinary care, should have known they were not suited for the particular employment.

70.

As a direct, proximate and foreseeable result of Defendant's negligence retentions of Major Zhu and Major Miller, Ms. Buckley was sexually discriminated, harassed, intimated, and retaliated against. Ms. Buckley has suffered and continues to suffer lost wages, damages and benefits for which the Defendant is directly liable, strictly liable, liable by proxy and vicariously liable.

## COUNT VII

## DEPRIVATION OF FEDERAL RIGHTS UNDER COLOR OF STATE LAW IN VIOLATION OF 42 U.S.C. § 1983 BY ALL DEFENDANTS

### 71.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

### 72.

Defendants have violated Plaintiff's federal rights protected by the Federal Constitution and by Federal Statutes or regulations under color of state law, ordinance, regulation, custom or usage of the Defendant in violation of 42 U.S.C. § 1983.

### 73.

The violation of Ms. Buckley's rights came about by the actions of Major Zhu and Major Miller under color of regulations, custom, policy or usage of the Army as described above, as well as the Army's custom and policy of not adequately training all its officers or investigating officers conduct.

### 74.

The conduct of Defendant in harassing, discriminating against, and retaliating against Ms. Buckley was based upon her race, sex/gender discrimination and prior complaints in violation of her rights to equal protection of the laws as granted by the Fourteenth Amendment to the United States Constitution.

75.

This violation of rights was ongoing, and Defendant continues to violate Ms. Buckley's rights by acting under color of state law and local ordinances, regulations, customs, and usages of the Army throughout the time period Ms. Buckley was employed by the Army, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests the Court to award her:

(a)    Compensatory damages, including, but not limited to, economic damages, severe emotional distress, mental anguish, embarrassment, humiliation, and physical suffering, an amount undetermined, but believed to be in excess of $75,000, pursuant to 42 U.S.C. § 2000e-5(g);

(b)    Costs, disbursements, and prejudgment interest pursuant to 42 U.S.C. § 2000e-5(k);

(c)    Costs and attorneys' fees as part of the costs pursuant to 42 U.S.C. § 2000e-5(k);

(d)    Any other equitable relief as the court deems appropriate pursuant to 42 U.S.C. § 2000e-5(g);

(e)    The Defendant be required to change the policy, procedures and practices involving the investigation of sexual discrimination and complaints to OPS; and

(f)    Such other and further relief as this Court deems just and proper.

This 22nd day of March, 2019.

Respectfully submitted,

**THE BURKE LAW GROUP LLC**

*/s/ E. Earle Burke*_____
E. Earle Burke
Ga Bar No. 095550
*Attorney for Plaintiff*

199 Peters Street
Suite A
Atlanta, Georgia 30313
Telephone No.: (404) 688-1210
Facsimile No.:  (404) 688-1251
Email: eburke@burkelawatl.com